UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

N⁰ 05 Civ. 3385 (RJS)
_____

TYRONE WINSTON,

Plaintiff,

VERSUS

RICHARD WOODWARD, NICHOLAS VALHOS, CHARLES STARLEY, RENE HERNANDEZ, AND JOHN DOES,

Defendants.

_____

MEMORANDUM AND ORDER
May 30, 2008
_____

RICHARD J. SULLIVAN, District Judge:

Plaintiff Tyrone Winston brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Richard Woodward, Nicholas Valhos, Charles Starley, Rene Hernandez, and John Does ("Defendants"), claiming that he was subjected to excessive force in violation of the Eighth and Fourteenth Amendments. On July 9, 2007, Defendants moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Plaintiff opposes summary judgment, arguing that he is excused from satisfying the PLRA's exhaustion requirement because: 1) any administrative remedies were functionally unavailable to him as a result of Defendants' misconduct; 2) Defendants are estopped from asserting a defense of non-exhaustion due to their prior misconduct; and 3) special circumstances precluded Plaintiff's compliance. (Pl.'s Opp. ¶¶ 3, 6, 7.)

For the reasons set forth below, Defendants' motion for summary judgment is granted.

I. BACKGROUND

A. The Facts

At all times relevant to the Complaint, Plaintiff was an inmate in the custody of the New York State Department of Correctional Services ("DOCS") at the Fishkill Correctional Facility ("Fishkill"). (Defendants' Rule 56.1 Statement ("Defs.' 56.1") ¶¶ 1, 16.) Plaintiff alleges that on May 29, 2004, while he was in his cell, Plaintiff was approached by Defendant Starley, who informed him that his cell was going to be searched. (Transcript of October 24, 2005 Deposition of Tyrone Winston ("Winston Dep. Tr.") at 34.) Defendant Starley then requested that Plaintiff place his hands out so that they could be handcuffed. (*Id.*) Plaintiff admits that he initially refused to comply with Defendant Starley's orders. (*Id.*) Upon his refusal Plaintiff was moved into the recreation pen, which was connected to the cell. (*Id.*) After being notified that Plaintiff refused to cooperate with the cell search, Defendant Woodward then entered the recreation pen and directed Plaintiff to put his hands on the wall. (*Id.* at 31.) Plaintiff claims that he complied with Defendant Woodward's orders. (*Id.*)

Plaintiff further alleges that, notwithstanding his compliance with the officers' directions, Defendants physically searched him. (*Id.* at 32.) He also claims that Defendant Valhos hit him in his testicles and that he was forcefully thrust onto the floor. (*Id.*) While on the floor, Plaintiff alleges that Defendant Woodward bent his left pinky finger backwards while he was being handcuffed, thereby dislocating it. (*Id.* at 32-33.) Additionally, he alleges that Defendant Valhos put his hand over Plaintiff's mouth to prevent him from shouting as a result of the pain he felt from his finger being dislocated, whereupon Plaintiff bit down on Valhos' finger. (*Id.* at 33.) Plaintiff asserts that following this altercation he was sent to receive medical treatment for his injury. (*Id.*) Thereafter, Plaintiff commenced a grievance proceeding against Defendants.

Under the PLRA, an inmate must exhaust his administrative remedies prior to initiating a suit in federal court. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007); *Ruggiero v. County of Orange*, 467 F.3d 170, 173 (2d Cir. 2006); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006). DOCS has established an Inmate Grievance Program ("IGP"), the purpose of which is to provide inmates with an "orderly, fair, simple and expeditious method of resolving grievances . . . ." 7 N.Y.C.R.R. § 701.1(a); *see also Abney v. McGinnis*, 380 F.3d 663, 668-69 (2d Cir. 2004); *Cruz v. Jordan*, 80 F. Supp. 2d 109, 117-18 (S.D.N.Y. 1999).

It is uncontested that the particular grievance procedure available to Plaintiff at the time of the incident involved a three-step process.[1] (Defs.' 56.1 ¶ 5.)[2] First, the formal

---

[1] Since the filing of this suit, the IGP, pursuant to 7 N.Y.C.R.R. § 701, has been amended, effective May 23, 2007. All references to the IGP are therefore made with respect to the provisions in effect at the time the Plaintiff instituted this action.

[2] Despite the Defendants' filing of the required documents giving notice to Plaintiff of the need to submit facts in support of his opposition, Plaintiff has not filed a 56.1 Opposition or 56.1 Statement of his own. All references are therefore to Defendants' 56.1 Statement.

2

grievance process is initiated by the filing of a written complaint with the Inmate Grievance Resolution Committee ("IGRC") within fourteen work days from the date of the alleged incident.[3] (*Id.*) If the IGRC does not grant the requested relief, the second step of the administrative procedure is the filing of an appeal with the Superintendent of the facility within four days after receipt of the IGRC's written response. (*Id.*); *see also* 7 N.Y.C.R.R. § 701.1(b). If the Superintendent does not grant the requested relief, the third step is to appeal to the Central Office Review Committee ("CORC") within four working days after receipt of the Superintendent's written response. (Defs.' 56.1 ¶ 5.) It is only after exhausting all three levels of this administrative review process that a prisoner may file a federal action and seek relief pursuant to § 1983, though failure to exhaust may be later deemed justified under several exceptions. *Porter*, 534 U.S. at 524; *see also Giano v. Goord*, 380 F.3d 670, 677-78 (2d Cir. 2004).

There are also special procedures that a prisoner must follow when his or her grievance involves a claim of harassment, to ensure that harassment claims are submitted directly to the Superintendent. *See* 7 N.Y.C.R.R. § 701.11. Harassment is broadly defined in the IGP as any allegation involving employee misconduct — specifically "[e]mployee misconduct meant to annoy, intimidate, or harm an inmate . . . ."

---

[3] The fourteen-day requirement may be waived upon a showing of "mitigating circumstances." 7 N.Y.C.R.R. § 701.1(a).

§ 701.11(a). In such instances, the inmate is required to report the occurrence to the immediate supervisor of the employee alleged to have engaged in the misconduct. (Defs.' 56.1 ¶ 7.)

After the grievance is filed, it is forwarded, along with supporting documents, to the Superintendent by the close of the same business day on which it was filed, in order to accelerate the grievance procedure. *See* 7 N.Y.C.R.R. § 701.11(b). Upon review of the harassment grievance, if it is determined that there is a *bona fide* harassment issue, the Superintendent may initiate an in-house investigation, request an investigation by the Office of the Inspector General or request an investigation by the State Police. *See* 7 N.Y.C.R.R. § 701.11(b)(4). Regardless of whether an investigation is initiated, the Superintendent must render a decision within twelve business days. *See* 7 N.Y.C.R.R. § 701.11(b)(5). If the Superintendent fails to respond within the time limit, the inmate may then appeal to the CORC. *See* 7 N.Y.C.R.R. § 701.11(b)(6), (7).

Additionally, DOCS regulations require that a representative of IGRC visit Plaintiff's housing unit at Fishkill at least once a week. (*See* Defs.' 56.1 ¶ 17); *see also* 7 N.Y.C.R.R. § 304.14(b); N.Y.C.R.R. § 701.13(c). During such a visit, the IGRC representative is required to announce his presence at the units and to respond to any inquiries by inmates regarding grievances. (Declaration of Michelle Stone ("Stone Decl.") ¶ 30.) If an inmate advises an IGRC representative that he had attempted to appeal a grievance to the CORC but his mail was tampered with, he

would be advised that he could re-submit his appeal. (*See* Defs.' 56.1 ¶ 31.)

On June 16, 2004, within fourteen days of the alleged May 29, 2004 incident, Plaintiff timely filed a grievance, claiming that the Defendants used excessive force against him, causing his left pinky to be fractured as well as asserting claims of harassment, mail tampering, and excessive searches of his cell. (*See* Defs.' 56.1 ¶ 8; Stone Decl. ¶ 8, Ex. A.) Since Plaintiff's grievance involved a charge of harassment, it was forwarded to the Superintendent's office for investigation on the day in which it was filed. (*See* Defs.' 56.1 ¶ 9.) An investigation was conducted, which included an interview of Plaintiff as well as the collecting of statements from all personnel allegedly involved in the incident. (*See id.* ¶ 10.)

On June 29, 2004, prior to receiving an initial determination from the grievance office, Plaintiff attempted to "appeal" his case on the grounds that he had not yet received such an initial determination. (*See id.* ¶ 12; *see also* Stone Decl. ¶ 13, Ex. E.) Specifically, he filed his appeal on an Inmate Grievance Compliant form, describing his problem as wanting to "appeal" his initial June 14, 2004 grievance. (*See* Defs.' 56.1 ¶ 12.) In response, Plaintiff was advised of the proper procedure to appeal and also that he would receive the Superintendent's timely response. (*See id.* ¶ 13; *see also* Stone Decl. ¶ 14, Ex. F.)[4]

On June 30, 2004, the Superintendent rendered his decision denying Plaintiff's grievance.[5] (*See* Defs.' 56.1 ¶¶ 11, 14; *see also* Stone Decl. ¶ 11, Ex. D.) Plaintiff does not dispute that he received the decision on or about June 30, 2004. (Defs.' Mem. at 6.) Plaintiff had four business days thereafter to file an appeal to theCORC. (Defs.' 56.1 ¶ 14.) There is nothing in the record demonstrating that Plaintiff filed that appeal, or made any other attempts to appeal the Superintendent's decision to the CORC. (*Id.* ¶ 15.)

According to Fishkill's visitor logbook entries, between June 30, 2004 and August 31, 2004, IGRC representatives engaged in regular visits to the facility.[6] There is nothing in the record indicating that Plaintiff notified the IGRC representative that he was prevented from filing an appeal. (*Id.* ¶ 22.) Additionally, there is nothing in the record indicating that Plaintiff expressed a concern regarding his grievance to other Fiskhill employees

---

[4] In the memorandum responding to Plaintiff's attempted appeal, he was also advised that the Inmate Grievance Complaint forms were not the proper method of appealing Supervisor's decisions. (*See* Defs.' 56.1 ¶ 13; *see also* Stone Decl. ¶ 14, Ex. F.)

[5] Specifically, the Superintendent's decision stated, "[Plaintiff's] grievance is found to be without merit and therefore is denied." (Defs.' 56.1 ¶ 11; *see also* Stone Decl. ¶ 11, Ex. D.) Below the formal opinion was a section, labeled "appeal statement" that further advised "[i]f you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have four working days from receipt of this notice to file your appeal." (Stone Decl. ¶ 11, Ex. D)

[6] The logbook of entries of all visitors to Fishkill between June 1, 2004 and August 31, 2004 reflects that rounds were conducted by IGRC representatives on June 29, 2004; July 15, 2004; July 20, 2004; July 23, 2004; July 27, 2004; July 29, 2004; August 3, 2004; August 6, 2004; August 10, 2004; August 17, 2004; August 20, 2004; August 24, 2004; and August 31, 2004. (*See* Defs.' 56.1, ¶ 20.; Stone Decl. ¶¶ 26-29, Ex. H.)

4

including medical personnel, corrections counselors or watch commanders. (*Id.* ¶ 26.)

Plaintiff made a request for information regarding his appeal on August 3, 2005, over one year after he submitted his initial grievance. (*Id.* ¶ 27; *see also* Stone Decl. ¶ 17, Ex. G.) In response, Plaintiff was provided with a copy of the June 30, 2004 decision and informed that the time granted to him to appeal the Superintendent's judgment had expired. (Defs.' 56.1 ¶ 28; *see also* Stone Decl. ¶ 18, Ex. F.)

### B. Procedural History

Plaintiff commenced this suit on March 30, 2005. On January 19, 2006, the Honorable Kenneth M. Karas, District Judge, issued an Order instructing the Office of the Attorney General to investigate Plaintiff's allegations, take appropriate steps to ensure Plaintiff's safety, and provide a detailed report regarding the status of this inquiry to the Court. (*See* Jan. 19, 2006 Order.) DOCS responded to the Court's order on January 30, 2006, stating that there was no validity to these claims. (Letter from Donald Delaney, dated Jan. 30, 2006.) On September 4, 2007, this case was reassigned to the undersigned.

Defendants filed the instant motion for summary judgment on July 9, 2007, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff failed to exhaust his administrative remedies under the PLRA. Plaintiff opposes the motion, arguing that he should be excused from adhering to the PLRA exhaustion requirements for three reasons. (Pl.'s Opp. ¶¶ 6-7.) First, he claims that he was subject to routine mail tampering and threats of retaliation by prison staff which caused the remedies to be unavailable to him. (*Id.* ¶¶ 3, 6.) Second, he contends that Defendants are estopped from asserting their defense by virtue of their misconduct in this case. (*Id.* ¶ 6.) Third, Plaintiff argues that special circumstances justify his failure to comply with the PLRA's procedural requirements. (*Id.* ¶ 7.) Plaintiff has not filed or produced any evidence in support of his opposition.

### II. STANDARD OF REVIEW

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23; *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The party moving for summary judgment has the initial burden to establish that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. The Court must view the evidence "in the light most favorable to the party opposing the motion." *Id.*; *see also Addickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). Failure to meet this burden requires the court to deny the motion. *Celotex*, 477 U.S. at 323.

If the moving party meets this initial burden, however, the burden then shifts to the non-moving party to produce admissible evidence demonstrating that there is a genuine

issue of material fact. *Id.* A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). "[O]nly when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). As such, the role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

In reviewing a *pro se* litigant's pleadings, courts are compelled to construe such claims liberally. *See Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Ferran v. Town of Nassau*, 471 F.3d 363, 369 (2d Cir. 2006); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Brownell*, 446 F.3d at 310.

### III. Discussion

#### A. The PLRA Exhaustion Requirement

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." In response to the sharp rise in federal prisoner litigation under § 1983, Congress enacted the PLRA. *See Porter*, 534 U.S. at 524. Specifically, in enacting the PLRA, Congress sought "to reduce the quantity and improve the quality of prisoner suits . . . [as well as to provide] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 524-25; *Brownell*, 446 F.3d at 310; *see also Ruggiero*, 467 F.3d at 174; *Abney*, 380 F.3d at 667.

The PLRA states that "[n]o action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1993e(a). The exhaustion requirement applies with equal force to actions concerning corrections officers' use of excessive force. *Porter*, 534 U.S. at 520; *see also Ruggiero*, 467 F.3d at 173 (holding that under *Porter,* excessive force claims are subject to the PLRA's exhaustion requirement). Failure to exhaust administrative remedies is an affirmative defense. *Giano*, 380 F.3d at 675.

While the Second Circuit has recognized the exhaustion requirement, certain exceptions have also been acknowledged. *See Ruggiero*, 467 F.3d at 175; *see also Giano*, 380 F.3d at 677. In *Hemphill v. New York*, 380 F.3d 680, 686 (2004), the Second Circuit held that courts should undertake a three-pronged inquiry in cases in which a "prison plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available remedies as required by the PLRA . . . ." *See, e.g.*, *Macias*, 495 F.3d at 43 (applying the *Hemphill* three-party inquiry).

Under *Hemphill*, a court should first consider "whether the administrative remedies were in fact 'available' to the prisoner." 380

6

F.3d at 686. Second, a court must determine whether "the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* Third, a court should examine whether there were "special circumstances" that excused plaintiff's failure to adhere to the administrative procedural requirements. *Id.*

The Supreme Court held in *Woodford v. Ngo*, 126 S.Ct. 2378, 2386 (2006), that prisoners must properly exhaust administrative remedies prior to pursuing a federal action under the PLRA by strictly "[adhering to] the system's critical procedural rules." Specifically, proper exhaustion "means using all steps that the agency holds out, and doing so *properly*." *Id.* at 2385. In the Court's view, prisoners would have little incentive to participate in the established grievance system unless "noncompliance carries a sanction." *Id.* at 2388.

The Second Circuit has not yet addressed the effect, if any, of *Woodford* on the *Hemphill* three-part inquiry. "Several courts within the circuit have acknowledged uncertainty caused by the tension between *Hemphill* and *Woodford*," noting, for example, that "the [Second Circuit] has at least partly retreated from its established exhaustion jurisprudence, recognizing the irreconcilable tension between *Woodford* and its earl[ier] decision[s] . . . and acknowledging that under *Woodford* mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement." *Chavis v. Goord*, No. 00 Civ. 1418 (LEK), 2007 WL 2903950, at *9 n.8 (N.D.N.Y. Oct. 1, 2007) (citations omitted); *see also Lawyer v. Gatto*, No. 03 Civ. 7577 (RPP), 2007 WL 549440, at *4 n.4 (S.D.N.Y. Feb. 21, 2007) (noting that "[t]he Second Circuit has not yet addressed *Woodford*'s impact, and [that] the district courts in this circuit have continued to apply the caveats to cases involving the PLRA"); *Sloane v. Mazzuca*, No. 04 Civ. 8266 (KMK), 2006 WL 3096031, at *5 (S.D.N.Y. Oct. 31, 2006) ("The Second Circuit has not addressed how [*Hemphill*'s] three-part approach . . . has been affected by *Woodford*" and "[u]ntil such time as the Court of Appeals considers the impact of *Woodford*, if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the current law of this circuit to the exhaustion claims."); *Hernandez v. Coffey*, No. 99 Civ. 11615 (WHP), 2006 WL 2109465, at *3 (S.D.N.Y. July 26, 2006). As such, this Court adheres to clear Second Circuit authority, as well as the approach followed by other district courts in this Circuit and applies the *Hemphill* three-part inquiry to Plaintiff's exhaustion claims.

B. Analysis

1. Availability of Administrative Remedies

Pursuant to § 1997e(a), exhaustion is required only where "such administrative remedies . . . are available." *See Mojias v. Johnson*, 351 F.3d 606, 609 (2d Cir. 2003); *Snider v. Melindez*, 199 F.3d 108, 113-14 (2d Cir. 1999). To determine whether administrative remedies were in fact available, the court must consider whether, from an objective point of view, a similarly situated person of ordinary resilience and intelligence would have deemed the remedies available.

7

*Hemphill*, 380 F.3d. at 688 (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). The Second Circuit has held that "threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *Hemphill*, 380 F.3d. at 688 (citation omitted).

Plaintiff claims that threats of retaliation made by several corrections officers at Fishkill, including Defendants, made his ability to pursue his grievance "functionally unavailable" pursuant to the first *Hemphill* element. (Pl.'s Opp. ¶ 6.) Additionally, Plaintiff claims that he suffered harassment and that his mail was routinely tampered with, thus preventing him from successfully appealing the Superintendent's ruling within the four-day period permitted under 7 N.Y.C.R.R. § 701.1(b). (*Id.* ¶¶ 3, 6.) Specifically, with regard to his mail-tampering claim, Plaintiff asserts that he mailed out his initial grievance under a fellow inmate's name, which was received by the Superintendent. (*Id.* ¶ 3.) He further contends that additional grievances that he sent under his own name were not received, thereby "prov[ing]" that the Fishkill staff was tampering with his mail. (*Id.*)

Defendants respond that, even assuming the truth of those allegations, Plaintiff had ample opportunity to file an appeal. (Defs.' Mem. at 12.) With regard to Plaintiff's mail fraud claims, Defendants cite several ways in which Plaintiff could have sought relief, including filing an appeal to CORC, the presence of IGRC representatives during routine rounds as well as the availability of other medical and corrections officers at Fishkill who Plaintiff could have advised of any mail tampering or threatening behavior. (*Id.*) Additionally, Defendants claim that if Plaintiff had informed any IGRC representative or other staff member of such alleged tampering, he would have been advised that he could re-submit his appeal. (*Id.*) Yet, as previously stated, no such record of Plaintiff submitting an appeal or notifying an IGRC or other Fishkill employee exists. (*Id.*) Defendants also challenge Plaintiff's assertion that he should be excused from exhaustion, pointing out that he not only filed an initial grievance on June 16, 2004, but also a second additional grievance that was later consolidated with it, and also an "attempted" appeal prior to the Superintendent issuing his decision. (*Id.* at 13). As such, Defendants contend that Plaintiff cannot claim, under *Hemphill*, that a similarly situated individual of "ordinary firmness" would have deemed the ordinary grievance procedures unavailable. (*Id.*) This Court agrees.

Plaintiff does not dispute that adequate administrative remedies were in place at Fishkill. Thus, as an initial matter, the Court finds that adequate administrative remedies were initially available to Plaintiff, in that grievance procedures were in place and generally made available to prisoners, including Plaintiff. *See Cruz*, 80 F. Supp. 2d at 117 (observing that "New York provides an elaborate administrative grievance process for prisoners in New York State correctional facilities"); *see also* 7 N.Y.C.R.R. § 701 *et. seq.* (establishing the inmate grievance procedure).

As for Plaintiff's claims that administrative relief was functionally unavailable to him, even taking the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff fails to meet the "ordinary firmness" standard as set forth in *Hemphill*. 380 F.3d at 688. Although Plaintiff alleges that Defendants' threats and retaliation prevented him from appealing his grievance, he also, by his own admission, filed an "appeal" using the Inmate Grievance Complaint form, on the day prior to the Superintendent rendering his decision, thus undercutting his claims that an appeal was functionally unavailable to him.

The case of *Amador v. Superintendents of Department of Correctional Services* is particularly instructive. No. 03 Civ. 0650 (KTD), 2007 WL 4326747, at *1 (S.D.N.Y. Dec. 4, 2007). In *Amador*, seventeen plaintiffs asserted claims of sexual abuse and harassment against prison officials. *Id.* In response, the defendants brought a motion to dismiss the case, which the court converted into a motion for summary judgment, arguing that the plaintiffs failed to exhaust all administrative remedies. *Id.* at *7. The plaintiffs contended that the administrative remedies were unavailable due to threats made against them by prison officials. *Id.* at *8. In granting the defendants' motion, the court rejected the plaintiff's claims, noting that three of the plaintiffs were in fact able to file formal grievances, a fact which "directly [cut] against" the plaintiffs' argument that such administrative remedies were unavailable. *Id.*

Here, Plaintiff was able to file an "appeal" on June 29, 2004. While this attempt was premature, it demonstrates that Plaintiff was able to submit a formal appeal, despite his alleged claims of misconduct and harassment. As such, it is apparent from not only an objective point of view of a reasonable person of ordinary firmness in Plaintiff's position, but also the actual subjective viewpoint of Plaintiff himself, that administrative remedies were in fact available to him during the relevant time period. Therefore, Plaintiff's attempted appeal directly cuts against his contention that administrative remedies were functionally unavailable to him. *See id*.

Nor has Plaintiff produced any evidence to withstand summary judgment. As noted above, in response to a motion for summary judgment, "a plaintiff . . . must do more than make broad factual allegations and invoke the appropriate statute." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Rather, the plaintiff must show that there are genuine issues of fact that may only be resolved at trial. *Id.*; *see also Anderson*, 477 U.S. at 250. While all reasonable inferences are drawn in favor of the non-moving party, courts in this Circuit have reviewed claims of retaliation by prisoners "with skepticism" because of the "ease with which a retaliation claim may be fabricated . . . ." *Nunez v. Goord*, 172 F. Supp. 2d 417, 431 (S.D.N.Y. 2001). *See also Colon*, 58 F.3d at 872 ("[W]e examine prisoners' claims of retaliation with skepticism and particular care."); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Here, Plaintiff claims that he should be excused from the PLRA's exhaustion requirement because he suffered retaliation for bringing his initial grievance, which included claims of harassment, misconduct and mail tampering, thereby preventing him from properly and timely appealing the

Superintendent's decision. However, he does not specify the dates of the alleged misconduct, the details of the particular incidents of threats and harassment, the officers who allegedly made threatening or harassing statements, or a copy of the alleged appeal that Plaintiff claims he sent through the mail that was, as he claims, fraudulently tampered with. Thus, Plaintiff's allegations "stand alone and unsupported." *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004); *see also Curry v. Mazzuca*, No. 05 Civ. 1542 (NRB), 2006 WL 250487, at *6 (S.D.N.Y. Feb. 2, 2006) (dismissing plaintiff's claim that he should be excused from the exhaustion requirement on the grounds that prison officials failed to respond to his allegedly filed grievance as "there [was] no evidence whatsoever that such a grievance was actually filed with a grievance clerk or ignored by prison officials"); *Davidson v. Talbot*, No. 01 Civ. 473 (CJQ), 2006 WL 1877144, at *7 (N.D.N.Y. July 5, 2006) (upholding the Magistrate's recommendation that plaintiff's "unsupported and unsubstantiated" claims of retaliation should be dismissed); *Nunez*, 172 F. Supp. 2d at 432 ("[Plaintiff's] assertions, standing alone, do not provide sufficient evidence of retaliation.").

Accordingly, in the absence of *any* direct or circumstantial evidence to substantiate Plaintiff's claims that administrative remedies were unavailable to him, the Court finds that Plaintiff has failed to satisfy the PLRA's exhaustion requirement.

2. Estoppel

Pursuant to the second prong of *Hemphill*, involving estoppel, this Court must consider whether defendants' actions estop them from asserting plaintiff's failure to exhaust as an affirmative defense. *Ziemba v. Wezner*, 366 F.3d 161, 163 (2004). Estoppel will be found where "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible." *Carini v. Austin*, No. 06 Civ. 5652 (NRB), 2008 WL 151555, at *3 (S.D.N.Y. Jan. 14, 2008); *see also Finger v. Superintendent McFinnis*, No. 06 Civ. 5652 (LTS), 2004 WL 1367506, at *4 (S.D.N.Y. June 16, 2004); *Berry v. City of New York*, No. 00 Civ. 2834 (RMB), 2002 WL 31045943, at *8 (S.D.N.Y. June 11, 2002). As such, the Second Circuit has held that a plaintiff's failure to exhaust all administrative remedies may be excused on the grounds of estoppel where the plaintiff was misled, threatened, or otherwise deterred from fulfilling the requisite procedures. *See Hemphill*, 380 F.3d at 688-89; *Ziemba*, 366 F.3d at 163-64.

Plaintiff claims that "the actions by prison staff inhibiting [Plaintiff's] exhaustion of his administrative remedies might estop the staff members from raising the defense of failure to exhaust said remedies." (Pl.'s Opp. ¶ 6.) Defendants fail to further respond to this contention, other than to assert that they are, in fact, not estopped from arguing exhaustion. (Defs.' Reply Mem. at 4.)

In light of Plaintiff's failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering, discussed *supra*, the Court finds, even taking the

evidence in the light most favorable to Plaintiff, that he has not put forth sufficient evidence to sustain his burden of demonstrating estoppel.

3. Plaintiff Has Not Shown the Existence of Special Circumstances

Finally, courts must consider whether any "special circumstances" exist to justify Plaintiff's failure to comply with the administrative procedural requirements pursuant to the PLRA. *See Giano*, 380 F.3d at 675; *Hemphill*, 380 F.3d at 690. To determine whether "special circumstances" exist, a court must consider the "circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano*, 380 F.3d at 678. Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion. For example, in *Hemphill*, the Court remanded the case to the district court to consider the plaintiff's arguments that regulations were manifestly unclear and that he justifiably interpreted rules as permitting him to appeal directly to the Superintendent. 380 F.3d at 689.

Here, Plaintiff claims that he should be excused from exhausting such administrative procedural requirements due to "special circumstances," and relies on *Giano* for the proposition that the plaintiff contended that the relevant DOCS Directive was unclear and that a reasonable person interpreting the rule would not have understood the requirements it put forth regarding the appropriate appeal procedure. (Pl.'s Opp. ¶ 7.) Plaintiff, however, fails to put forth any further arguments to support to support his contention that "special circumstances" should be found to alleviate his failure to comply with the exhaustion requirement. Despite this omission, the Court must construe a *pro se* litigant's pleadings liberally and read their claims as "rais[ing] the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

Therefore, even assuming Plaintiff misinterpreted the appeals process, Plaintiff's contentions fail to demonstrate "special circumstances" that would justify Plaintiff's failure to exhaust his administrative remedies. Plaintiff has failed to present any arguments regarding what he believed the appropriate procedural requirements to be. Moreover, unlike in *Giano*, Plaintiff did not take any affirmative steps to appeal the Superintendent's decision based upon some erroneous, yet "reasonable," interpretation of the grievance procedures. Rather, Plaintiff offers a wholly conclusory and vague assertion that "special circumstances" should excuse his non-compliance with the exhaustion requirements. *See Giano*, 380 F.3d at 677-78. Therefore, without any evidence to demonstrate what Plaintiff's alleged interpretation of the instructions for appeal was or any alternative efforts he undertook to appeal the claim based on such an interpretation, the Court finds that Plaintiff has failed to meet his burden under *Hemphill* of demonstrating "special circumstances."

Because none of the exceptions outlined in *Hemphill* apply to the facts of this case, the Court finds that Plaintiff has failed to satisfy the PLRA's exhaustion requirement.

Accordingly, Plaintiff's claims are barred pursuant to 42 U.S.C. § 1997e(a).[7]

V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: May 30, 2008
New York, New York.

\* \* \*

Plaintiff appears *pro se* in this action. Defendants are represented by Judy Prosper, Esq., and Kevin P. McCaffrey, Esq., Office of the New York State Attorney General, 120 Broadway, New York, New York 10271.

---

[7]Following the completion of briefing on Defendants' summary judgment motion, Plaintiff filed two motions: (1) a "motion to dismiss" Defendant's summary judgment motion (filed on October 16, 2007); and (2) a motion for appointment of counsel (filed on December 19, 2007). Plaintiff's motions are denied as moot, given the above findings of the Court.